**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **C.S.** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. |
| | : | |
| **O'HARE AIRPORT HOTEL LLC,** | : | JURY TRIAL DEMANDED |
| | : | |
| **G6 HOSPITALITY LLC,** | : | |
| | : | |
| **LOMBARD PUBLIC FACILITIES CORPORATION,** | : | |
| | : | |
| **MARRIOTT INTERNATIONAL, INC.,** | : | |
| | : | |
| **ESA P PORTFOLIO LLC,** | : | |
| | : | |
| **BW RRI I LLC,** | : | |
| | : | |
| **RED ROOF FRANCHISING, LLC,** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **WESTLOOP EQUITIES, L.L.C.** | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT**

**AND NOW**, comes the Plaintiff, C.S., by Andreozzi + Foote, who files this Complaint against the Defendants, **O'HARE AIRPORT HOTEL LLC, G6 HOSPITALITY LLC, LOMBARD PUBLIC FACILITIES CORPORATION, MARRIOTT INTERNATIONAL, INC., ESA P PORTFOLIO LLC, BW RRI I LLC, RED ROOF FRANCHISING, LLC, AND WESTLOOP EQUITIES, L.L.C.** and in support thereof, state as follows:

**INTRODUCTION**

1.      This action for damages is brought by Plaintiff, survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2.      Sex trafficking is defined under 22 U.S.C. § 7102 (11) as "[t]he recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age."

3.      Plaintiff meets the definition of a sex trafficking victim, induced by force, fraud, and coercion by a Trafficker to engage in commercial sex at the subject hotel(s), by being psychologically and physically prohibited from escape by a Trafficker, or alternatively, was a minor at the time of the trafficking.

4.      The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act.

5.      Section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the trafficker (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

## PARTIES

6.      Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address is not contained herein protect the safety, privacy and identity of sex trafficked victims. Nationwide similarly situated plaintiffs have proceeded by pseudonym

or by their initials due to the foregoing.

7.      Plaintiff is currently a resident of Illinois.

8.      Plaintiff was born in 1993.

9.      At all times relevant and material, Defendant O'Hare Airport Hotel LLC was registered to do business in Illinois, with a registered agent, Kumar Koneru, located at 2881 Touhy Ave, Elk Grove Village, IL 60007. Its principal address is located at 10807 Laurel Street, Suite #10, Rancho Cucamonga, CA 91730.

10.     Defendant O'Hare Airport Hotel LLC was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel, doing business as Motel 6 in Elk Grove Village, located at 2881 Touhy Ave, Elk Grove Village, IL 60007 during the relevant period, and prior thereto, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

11.     Defendant G6 Hospitality LLC ("G6") owns, manages, or operates more than 1,400 economy or budget motels under the Motel 6 brand. At all times relevant and material, Defendant G6 was a Delaware Limited Liability Company registered to do business in Illinois, with a registered agent, Cogency Global Inc., located at 600 South Second Street, Suite 404, Springfield, IL 62704. Its principal address is located at 4001 International Parkway, Carrollton, TX 75007.

a.  In managing all its Motel 6 brand properties, G6 receives an application fee, a lump sum payment, royalties, and other ongoing financial benefits from its Motel 6 branded properties.

b.  As a hotel operator, G6 controls the training and policies for its branded properties including the Motel 6 in Elk Grove Village. Through its relationship with the staff at the Motel 6 in Elk Grove Village and the individual who trafficked C.S. at the

Motel 6 in Elk Grove Village while registered as a guest there, Defendant G6 knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    c. G6 receives a percentage of the gross room revenue from the money generated by the operations of the Motel 6 Elk Grove Village including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked in 2015 and 2016.

12. Defendant Lombard Public Facilities Corporation ("Lombard") is an Illinois corporation. It can be served by its registered agent, Donald E. Renner III, at 1415 West 22nd Street, Tower Floor, Oak Brook, IL 60523.

13. Defendant Lombard was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel, doing business as the Westin Chicago Lombard, located at 70 Yorktown Shopping Center, Lombard IL 60148 during the relevant period, and prior thereto, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

14. Defendant Marriott International, Inc. ("Marriott") is a Delaware corporation. It can be served by its registered agent, Illinois Corporation Service Company, at 801 Adlai Stevenson Drive, Springfield, IL 62703.

    a. Marriott owns, supervises, manages, controls, and/or operates the Westin Chicago Lombard located at 70 Yorktown Shopping Center, Lombard IL 60148 where Plaintiff was trafficked.

    b. Marriott owns the Westin brand.

c. Marriott is the principal in an agency relationship with the Westin Chicago Lombard. In addition to Marriott's liability under TVPRA section 1595, Marriott is vicariously liable for the acts and/or omissions of the staff at the Westin Chicago Lombard.

d. The Westin Chicago Lombard where Plaintiff was trafficked has apparent agency for Marriott so as to establish vicarious liability in addition to an actual agency relationship.

e. Marriott has ratified the actions and inactions of the Westin Chicago Lombard. Marriott exercises day-to-day control over the Westin Chicago Lombard through its brand standards, and retains control over the Westin Chicago Lombard under the terms of its franchise agreements.

f. As the principal and as a hotel operator, Marriott controls the training and policies for its branded hotels, including the Westin Chicago Lombard where Plaintiff was trafficked. Marriott represents that it considers guest safety and security important and requires the branded hotels in its portfolio to comply with Marriott brand standards and all local, state, and federal laws.

g. Upon information and belief, Marriott also controls a uniform and required reservation and marketing system, credit processing system, and training and policy on brand standards, including policies on human trafficking, cybersecurity, guest preferences, reward programs, internet access, hotel furniture, amenities, food and beverage, cleanliness, and/or other hotel brand related policies published and communicated via property management systems with back-end management by Marriott, Wi-Fi qualifications and/or Wi-Fi qualified service providers, language

and policy used on internet landing pages, thresholds for cybersecurity, filtering and/or other guest internet protections, systems used to monitor customer reviews and responses, and other systems related to the daily operations at the Westin Chicago Lombard where Plaintiff was trafficked.

h. Through Marriott's relationship with the staff at the subject hotel where Plaintiff was trafficked and where Plaintiff's traffickers were guests or visitors, Marriott knowingly benefited, or received something of value, from its participation in a venture which it knew or should have known to be engaged in sex trafficking through royalty payments, licensing fees, and percentages of the gross room revenue which Marriott is entitled to under its franchise agreements.

i. Marriott benefits financially by receiving a percentage of the gross room revenue from the money generated by the operations of its hotels, including through a percentage of the revenue generated at the Westin Chicago Lombard from the rates charged on the rooms in which Plaintiff was trafficked for sex.

j. Marriott regularly conducts business in the State of Illinois, derives substantial revenue from services rendered in Illinois, including through the operation of numerous hotels in Illinois, including the Courtyard by Marriott, has caused injuries to Plaintiff in Illinois, and has profited from an illegal sex trafficking venture at the Westin Chicago Lombard.

15. Defendant ESA P Portfolio LLC ("ESA") was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel, doing business as Extended Stay America Suites-Chicago-Lombard-Yorktown Center, located at 260 E 22nd

Street, Lombard, IL, 60148 during the relevant period, and prior thereto, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

16. Defendant ESA is a Delaware Limited Liability Company with a principal address at 13024 Ballantyne Corporate Place, Charlotte, NC 28277. It can be served by its registered agent, National Registered Agents, Inc., located at 208 South Lasalle Street, Suite 814, Chicago, IL 60604.

17. Defendant BW RRI I LLC ("BW RRI") is a Delaware Limited Liability Company with a principal address of 5847 San Felipe, Suite 4650, Houston, TX 77057. It can be served by its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

18. Defendant BW RRI was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel, doing business as Red Roof Inn Chicago-Downers Grove, located at 1113 Butterfield Road, Downers Grove, IL 60515, during the relevant period, and prior thereto, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

19. Defendant Red Roof Franchising, LLC ("Red Roof") is a Delaware corporation. It can be served by its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

   a. Defendant Red Roof was a hotel owner, hotel operator, and/or franchisor of the subject premises and subject hotel, who exercised control over the day to day operations at Red Roof Inn Chicago-Downers Grove, located at 1113 Butterfield Road, Downers Grove, IL 60515, or exerted a high degree of control that it effectively controlled the operations of this hotel during the relevant period, and

prior thereto, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

b. Defendant Red Roof has ratified the actions and inactions of the Red Roof Inn Chicago-Downers Grove. Defendant Red Roof exercised day-to-day control over the Red Roof Inn Chicago-Downers Grove through its brand standards, and retained control over the Red Roof Inn Chicago-Downers Grove under the terms of its franchise agreements.

c. Defendant Red Roof was the principal in an agency relationship with the Red Roof Inn Chicago-Downers Grove. In addition to RRI's liability under TVPRA section 1595, Defendant Red Roof is vicariously liable for the acts and/or omissions of the staff at the Red Roof Inn Chicago-Downers Grove.

d. Upon information and belief, Defendant Red Roof also controls a uniform and required reservation and marketing system, credit processing system, and training and policy on brand standards, including policies on human trafficking, cybersecurity, guest preferences, reward programs, internet access, hotel furniture, amenities, food and beverage, cleanliness, and/or other hotel brand related policies published and communicated via property management systems with back-end management by Red Roof, Wi-Fi qualifications and/or Wi-Fi qualified service providers, language and policy used on internet landing pages, thresholds for cybersecurity, filtering and/or other guest internet protections, systems used to monitor customer reviews and responses, and other systems related to the daily operations at the Red Roof Inn Chicago-Downers Grove where Plaintiff was trafficked.

e. Through Red Roof's relationship with the staff at the subject hotel where Plaintiff was trafficked and where Plaintiff's traffickers were guests or visitors, Red Roof knowingly benefited, or received something of value, from its participation in a venture which it knew or should have known to be engaged in sex trafficking through royalty payments, licensing fees, and percentages of the gross room revenue which Red Roof is entitled to under its franchise agreements.

20. Defendant Westloop Equities, L.L.C., ("Westloop") is an Illinois Limited Liability Company with a principal address of 506 West Harrison Street, Chicago, IL 60606. It can be served by its registered agent, SCN&R Registered Agent, Inc., located at 233 South Wacker Drive, Suite 5900, Chicago, IL 60606.

21. Defendant Westloop was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel, doing business as Holiday Inn & Suites Chicago-Downtown by IHG, located at 506 West Harrison Street, Chicago, IL 60607 during the relevant period, and prior thereto, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

23. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and Defendants conducts business within this District pursuant to 28 U.S.C. § 1391(b).

**FACTS**

24.     As it pertains to the subject Defendants, Plaintiff was sex trafficked at the aforesaid hotels, owned and/or operated by Defendants, by her Trafficker in 2015 and through and inclusive of March 2016.

25.     Plaintiff was trafficked by Benjamin Biancofiori ("Trafficker"), who used threats and physical violence to keep Plaintiff compliant.

26.     Plaintiff's Trafficker frequently rented hotel rooms at each of the hotels listed above for Plaintiff and other women to engage in commercial sex with customers.

27.     Plaintiff's Trafficker would physically beat Plaintiff with such force that he caused noticeable bruising, swelling, and lacerations.

28.     Plaintiff's injuries would have been visible to employees at the subject hotels.

29.     Plaintiff was dressed in provocative clothing while in common areas at the subject hotels.

30.     The large amount of sex buyers generated significant foot traffic in and out of Plaintiff's room at the subject hotels.

31.     Sex trafficking occurred at these subject hotels, upon information and belief, prior to Plaintiff's trafficking.

32.     Defendants knew or should have known that Plaintiff was a victim of a venture that involved sex trafficking by force, threat of force, fraud, or coercion.

33.     As hotel owners and hotel operators, Defendants controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was sex trafficked.

34.     A significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

35.     The hospitality industry is a major life source of the human trafficking epidemic both in the U.S. and abroad.[1] The United Nations,[2] international non-profits,[3] and the U.S. Department of Homeland Security,[4] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

36.     In 2004 End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States, identifying the steps companies would need to take to prevent child sex trafficking. ECPAT-USA identified hotel(s)-specific best practices for preventing sex trafficking, such as: (1) not renting by the hour; (2) not permitting cash payments; (3) monitoring online sex ads such as Craigslist and Backpage for its hotel(s) name and pictures of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly; (5) watching for a trend of visitors to the same room; (6) being aware of rooms with excess

---

[1] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL(S) ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3 /.

[2] *Global Report on Trafficking in Persons,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (2020), 84 8available at https://www.unodc.org/documents/data-and analysis/tip/2021/GLOTiP_2020_15jan_web.pdf /. See also *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (April 24, 2012) available at https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html /.

[3] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[4] Human Trafficking and the Hospitality Industry, U.S. DEPARTMENT OF HOMELAND SECURITY (2020), available at https://www.dhs.gov/blue-campaign/hospitalityindustry /; Hospitality Toolkit, U.S. DEPARTMENT OF HOMELAND SECURITY (2016), available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf /.

condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number.

37.     Further, nationwide campaigns have recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue and took initiative as early as 1997 with the United Nations Blue Heart Campaign[5] and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[6]

38.     These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released free online resources and toolkits publicly accessible to any entity concerned with human trafficking.

39.     The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 as well as numerous other legislative initiatives, put the Defendants on notice of the high likelihood of these illegal acts occurring on the subject hotel(s) premises which, at a minimum, warranted them to be more vigilant and proactive in preventing this conduct.

40.     Years before Plaintiff was trafficked, Defendants knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking.

41.     By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

---

[5] *The Blue Heart Campaign,* UNITED NATIONS (2022), https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heinous%20crime /.
[6] *DHS Blue Campaign Five Year Milestone*, DEP'T OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone /.

42. Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel(s).

43. Due to the involvement and affirmative actions of Defendants (as owner and operator, and by its staff and employees while acting within the scope of their employment), in associating with, facilitating and enabling the undertaking of the sex trafficking of Plaintiff by her Trafficker on Defendants' premises in violation of the TVPRA, including, but not confined to, by:

a. Defendants repeatedly rented rooms to Plaintiff's Trafficker when Defendants knew or should have known said Trafficker was engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA;

b. Defendants associating with Plaintiff's Trafficker in an effort to force her to serve their business objective;

c. Defendants allowing commercial dealings with the aforesaid Trafficker (e.g., in the form of room rentals) to continue on the subject premises and to be reinstated for a profit motive;

d. Defendants' staff and employees acting as lookouts and informants, during the scope of their employment, for the benefit of the Trafficker so as to alert the aforesaid Trafficker of police activity or similar type warning alerts, or otherwise failing to respond to clear signs of trafficking;

e. Defendants actively advancing the sex trafficking operation of Plaintiff's Trafficker by knowingly facilitating and negligently facilitating the venture's activities, i.e., the sex trafficking of Plaintiff; and,

f. Defendants were otherwise being actively involved and affirmatively enabling Plaintiff's Trafficker and facilitating the venture's success, Plaintiff was caused to be sex trafficked by her Trafficker on Defendants' premises in violation of the TVPRA.

44. Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well

as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel(s).

45.     Defendants failed to act upon the obvious and overt signs alerting them to the sex trafficking taking place at this subject hotel(s) including as to Plaintiff herein and in violation of the TVPRA.

46.     Had the Defendants timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by the Plaintiff at the subject hotel(s) would have been prevented or mitigated.

47.     Due to the failure of Defendants to timely and properly implement anti-trafficking policies and practices, Plaintiff was repeatedly victimized and trafficked for sex on Defendants' premises in violation of the TVPRA.

48.     Defendants by its passive or active involvement and affirmative enabling of the subject trafficking was a proximate and competent cause and substantial factor in causing P Plaintiff severe injuries in this case including, but not limited to, her being the victim of sex trafficking, which has caused Plaintiff severe injury.

49.     Because of the foregoing conduct of Defendants, the Plaintiff suffered severe and permanent injuries and damages, as outlined herein.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

50.     Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendants.

51.     At all relevant times, Plaintiff was involved in the staffing and operation of the

subject hotels where Plaintiff was trafficked for sex.

52.     Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

53.     As it pertains to this Plaintiff, Plaintiff was sex trafficked at the subject hotels owned and operated by Defendants.

54.     Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591.

55.     Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking. See 18 U.S.C. §1595(a).

56.     More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the Trafficker who directly violated § 1591(a)(1) – a criminal statute; (2) a beneficiary claim against the Trafficker who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil Defendants who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil Defendants.

57.     In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotels, Trafficker used various means to do so including but not limited to (a) Trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants' staff; (b) Trafficker instilled in Plaintiff the fear of severe bodily injury and/or fear of death if Trafficker's directives were not complied with; (c) psychological

coercion; (d) withholding Plaintiff's identifying documents; and (e) other means of force, fraud and coercion used by the Trafficker of Plaintiff to induce sex with sex buyers at the subject hotels.

58. Defendants knowingly benefited from the sex trafficking of Plaintiff at the subject hotels by receiving payment for the rooms rented by her Trafficker (or at the direction of her Trafficker) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA.

59. Defendants rented rooms to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

60. The rental of a hotel room constitutes a financial benefit from a relationship with the Trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

61. Plaintiff Trafficker took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for rooms rented at the subject hotels during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

62. In addition, Defendants received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her Trafficker online) and from such Wi-Fi service Defendants, upon information and belief, received financial benefit.

63. Defendants participated in a venture by operating the subject hotels that rented rooms to individuals that Defendants, knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

64. During the time Plaintiff was trafficked at the subject hotels, Plaintiff's Trafficker had direct interaction with employees and staff of Defendants by means of paying, befriending, and/or compensating employees and staff members of said Defendants to act as

lookouts/informants for Plaintiff's Trafficker, while acting in their scope of employment, so as to inform the Trafficker of police activity or other similar type alerts.

65. In this case, during the relevant period alleged herein, Defendants took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's Trafficker that violated the TVPRA.

66. Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

67. Defendants operating the subject hotels and renting out rooms to Plaintiff's Trafficker was an enterprise involving risk and potential profit.

68. Defendants operating the subject hotels and renting out rooms to Plaintiff's Trafficker was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

69. By renting rooms to Plaintiff's Trafficker Defendants, the hotel owners and operators, were associating with Plaintiff's Trafficker in an effort to force Plaintiff to serve their business objective.

70. The modus operandi of Trafficker was to renew the room rental daily.

71. A continuous business relationship existed between the subject hotels, its agents, employees and staff, and Plaintiff's Trafficker, in part, in that the hotels repeatedly rented rooms, and/or repeatedly renewed room rentals, to individuals they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

72. Plaintiff's Trafficker had prior commercial dealings with the subject hotels which the Trafficker and Defendants wished to reinstate for profit when Plaintiff's Trafficker repeatedly rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims

including Plaintiff.

73.     These Defendants had constructive and actual knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff.

74.     Defendants knew or should have known about the nature of the sex trafficking occurring at the subject hotels, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

(a) constant foot traffic of sex buyers to the Trafficker's rented rooms to have sex with trafficked victims, including Plaintiff;
(b) trafficked victims, including Plaintiff, would walk around hotel grounds drug and/or alcohol impaired, sleep deprived, hygiene impaired, behavior impaired, with visible bruising, malnourished, and in sexually explicit clothing;
(c) suspicious individuals loitering outside the hotel rooms when a sex buyer would enter a room;
 (d)  inside the hotel rooms rented by the Trafficker (or at the direction of the Trafficker) there was a suspicious bunch of people and suspicious items including cash, drugs, drug paraphernalia, condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;
(e) Trafficker monitoring hotel hallways, door of rooms and walking hotel perimeter;
(f) Trafficker shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotel staff;
(g) Plaintiff soliciting for sex buyers on the hotel premises at the direction of her Trafficker,
(h) Plaintiff's room exhibited signs of commercial sex work,
(i) Loud noise and yelling emanating from room where sex trafficking of Plaintiff was occurring
(j) Trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants' staff
(k) overt evidence that Plaintiff was being induced by force, fraud and coercion to have sex with sex buyers on the subject premises [e.g. (1) visible bruising (2) overt physical deterioration of Plaintiff, (3) physical and/or verbal abuse occurring in common areas of the subject hotel(s) in view and/or earshot of staff of Defendants, (4) Trafficker overtly asserting control over Plaintiff in common areas of the hotel(s) in view and/or earshot of staff of Defendants (5) intermittent screaming from room(s) where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room
and (l) other commonly known sex trafficking red flags which the above captioned Defendants knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotels.

75.     Defendants' staff witnessed and observed signs and indicators of sex trafficking

including items set forth in the paragraph above.

76.     When being trafficked at the subject hotels, Plaintiff interacted with Defendants' staff, and Defendants' staff witnessed and observed Plaintiff, Trafficker as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

77.     Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

78.     Defendants were involved and affirmatively took actions as the hotel owners and operators on Defendants' subject premises during the relevant time period to advance the objective of this undertaking by (a) Defendants repeatedly renting rooms to Plaintiff's Trafficker when Defendants knew or should have known said Trafficker was engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA, (b) Defendants associating with Plaintiff's Trafficker in an effort to force her to serve their business objective, (c) Defendants allowing commercial dealings with the aforesaid Trafficker to continue on the subject premises and to be reinstated for a profit motive, (d) staff and employees of Defendants acting as lookouts and informants, while in the scope of their employment, for the benefit of the Trafficker so as to alert the aforesaid Trafficker of police activity or similar type warning alerts, (e) Defendants knowingly facilitating and/or negligently facilitating the Trafficker's activities, i.e., the sex trafficking of Plaintiff, and (f) in otherwise being actively involved and affirmatively enabling Plaintiff's Trafficker and facilitating their venture's success.

79. Defendants' failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at these subject hotels and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries.

80. These Defendants, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel(s) room for unlawful purposes, (4) guest uses hotel(s) amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel(s) and (8) for other indicated reasons.

81. Plaintiff being sex trafficked at this subject hotel(s) was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked.

82. As a direct and proximate result of Defendants' involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel properties, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendants' hotels in violation of the TVPRA.

83. Because of being sex trafficked at the subject hotels, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotels in violation of 18 U.S.C. §1591.

## COUNT II
## NEGLIGENCE, GROSS NEGLIGENCE, AND RECKLESSNESS

84. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

85. At all times relevant, Defendants owed a duty to protect Plaintiff from harm while in the care of Defendants and/or Defendants' agents.

86. Defendants violated its duty, and was negligent, careless, grossly negligent, and/or reckless as follows:

a. By failing to establish adequate sex trafficking prevention policies, procedures, and practices;

b. By failing to make mandatory and adhere (and ensure adherence) to such policies, procedures, and practices;

c. By failing to retain, hire, train, and supervise agents/employees with regard to the prevention of sex trafficking;

d. By failing to adequately monitor and supervise the premises and/or Trafficker and Plaintiff;

e. By failing to know and react to the risks of sexual trafficking inherent in its activities;

f. By failing to require sex trafficking training;

g. By failing to recognize the signs that Trafficker was a sex trafficker or that Plaintiff were being sex trafficked;

h. By failing to report Trafficker to the appropriate authorities; and,

i. By violating the duties imposed upon them pursuant to the Restatement of Torts, Second, §§ 314A, 315, 317, 323, 324A, 343, 344, & 371.

87. As a direct and proximate cause of Defendants' actions and omissions, and breach of the duties of reasonable care, Plaintiff was injured, resulting in damages.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as identified in the above-referenced Counts and as follows:

a) All available compensatory damages for the described losses with respect to the above cause of action;
b) Past and future emotional distress;
c) Consequential and/or special damages;
d) All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;
e) Disgorgement of profits obtained through unjust enrichment;
f) Restitution;
g) All damages allowable under the TVPRA;
h) Reasonable and recoverable attorney's fees;
i) Punitive damages with respect to each cause of action;
j) Costs of this action; and
k) Pre-judgement and all other interest recoverable

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

Respectfully Submitted,


Dated: March 27, 2026

/s/ Katherine A. Cardenas

Katherine A. Cardenas (ARDC #06237912)
**TRAUMA LAWYERS**
221 N. LaSalle Street, Suite 1750
Chicago, IL 60601
(T) (312) 781-0082
(F) (630) 672-4991
(E) KCardenas@TraumaLawyers.com
*Attorneys for Plaintiff*

Of Counsel:
Ashley Ventrillo, Esq.
J. Alexander Marcinko, Esq.
Nathaniel L. Foote, Esq.
**ANDREOZZI + FOOTE**
4503 North Front Street
Harrisburg, PA 17110
TeamD@vca.law
(t) (717) 525-9124 | (f) (717) 525-9143
*Attorneys for Plaintiff (Pro Hac Vice
Pending)*